Good morning. We have three cases that are scheduled for oral argument this morning. I see that Mr. Summa and Ms. Lerner are at council table and ready to go. Mr. Summa, are you ready to proceed? Yes. You may proceed. May it please the court, I am Richard Summa. I represent the appellant Wali Ross. In this appeal, we challenge the district court's denial of Mr. Ross' motion to suppress evidence seized from his hotel room. There are a number of hurdles for us to clear in this case. And the first question is whether the protective sweep of the hotel room was lawfully justified. And let me start by saying the reasonableness of the protective sweep is an issue of the law to be reviewed de novo. And similarly, the question whether officers were in hot pursuit of Mr. Ross ultimately is a question of law to be reviewed de novo. Can I ask you a quick question? So you say that's the first question. It seemed to me the first question might be whether you have standing to challenge either search. So can you help us with standing, what I'll call Fourth Amendment standing, abandonment? Well, specifically with the question of abandonment, okay. We can take them one at a time. Talk to me first about abandonment with respect to the first search. He runs from the hotel. Your brief says, look, he was never coming back. And so why isn't that under our precedent abandonment? Well, because, okay, the question of abandonment is a question of intent. But Mr. Ross had already left the hotel room when he spotted officers and he decided to flee because he knew he was likely to be arrested. So the question is, at the time that he left the hotel room, what was his intent? So his departure from the hotel room was quite similar to my departure from my hotel room this morning. I took the key. You say in your brief that he had no intention of returning to the hotel room. In the immediate future, that's a different question, whether he had abandoned any interest in the property that he left in the hotel room. But we've got this old case, right, this old Fifth Circuit case called Edwards, where the guy, there's a high speed chase. Cops kind of corner him. He gets out of the car. The car's still running. The keys are still in the ignition. I think he runs away. Cops chase him for a while. They come back to the car and we say that car has been abandoned. Right. Well, this is not the case where, let's say you may have a car chase and the suspect drives over a bridge, throws it, rolls down the window, throws a firearm out the window into the river. We can be fairly certain he had no intention to retrieve that firearm because it would have been pretty much impossible. But on the other hand, when Mr. Ross left the hotel room, it seems, it seems. So your argument is that he never abandoned the hotel room, that the cases that we've decided deal primarily with vehicles or personal property left in public spaces. But this is a hotel room for which he had a reasonable expectation of privacy. And it's just like his home. Is that your argument? Yes, Your Honor. And that's that's part of our argument. Yes. And at the time he left the hotel room, he it was still prior to checkout time. And so he he likely under these facts intended to return to the hotel. That's that's where I think we're all having a problem. And it seems to me you're wanting to have it both ways. With respect to the protective sweep at 9 a.m., you're wanting to say they knew he wasn't come back to the hotel room. It was absurd for them to go back to the hotel room. And with respect to the 11 a.m. search based upon the hotel's consent, you're saying, no, no, the hotel can't consent. My client hadn't abandoned his possessory interest in the room. I don't know. How can I reconcile those two positions? Well, I think the law permits it because the question for the protective sweep is whether the officers themselves had an objectively reasonable belief that he had returned to the hotel room. And in that in that case, of course, the undisputed facts that he fled across the interstate. The officers chased after them. They lost sight of him. And it was merely because they had not left the hotel room guarded that they had nothing more than a hunch that perhaps he had returned to the hotel room. So the legitimacy of the of the protective sweep depends basically on whether the officer's belief that he was in the hotel room was objectively reasonable. And there's no. So at the witching hour at 11 a.m., when he is supposed to be either checked out or extended his time. Is it reasonable to assume he's coming back to the hotel room at that point with police still in the parking lot? At that time at 11 o'clock? No. With police in the parking lot? No. And then the question devolves. Another question develops at that time at 11 o'clock, whether the consent given by the hotel manager was truly voluntary. Even before that, whether at 11 o'clock or 11 or one, he had any reasonable expectation of privacy on the premises. Right. And we say that he did. We know why is that? That would that would be contrary to pretty much what every other circuit has said. Right. But every other circuit did not consider the application of this Florida statute, which prescribes and circumscribes the the the relationship, the rights and the responsibilities and the obligations between. Yes. See, here's my problem with the statute. I think the statute basically says that you've got a defense to a misdemeanor prosecution if you overstay your welcome. But it doesn't give you an affirmative right to stay and stay and stay and stay and stay. So long as the hotel doesn't affirmatively kick you out. Well, the right is not unlimited, but there is a right. And in fact, this area of the law is highly regulated. It's not it's not unusual in any sense because the relationship between landlords and tenants is is is is very frequently. All right. Let's say controlled by state law. Let's say the police don't go in. Don't do a protective sweep. They just set up in the parking lot waiting for him to come back. He doesn't come back. You've already said he's not going to come back with the police in the parking lot. What's the hotel going to do at that point? They go into the room. What they should do is follow the law of Florida, which is at least attempt to give some notice to the registered guests. In this case, the registered guest was a Miss Denise Wilson. So and they had her number on the on the on the on the registration card. They made no attempt to call her under the Florida law. If she had been reached, she could have come and vacated the room and taken all the possessions out of the room. If that's the case, how does your client have standing to challenge the search of a hotel room that belongs to someone else? That question, I think, has been answered by the Supreme Court. In what case? In the Bird case. Well, let me let me let me begin by there are several steps. First, the hotel. A hotel is generally gets as much protection as a dwelling. And then in the Minnesota. Right. If you if you rent the hotel room yourself, I think in the cases that you're referring to, someone rented the hotel room. Not in their name, but in the name of an alias, which is really the person right in the hotel room. But what I'm asking is, in this case, Denise Wilson rented the hotel room, right? Yeah, it was her room. She rented it in her name. So what gives him standing to challenge? Are there some facts to the record? No. Two Supreme Court cases give him standing. The first is Minnesota v. Olson, which says an overnight guest in a dwelling is entitled to Fourth Amendment protection. I apply the same to a hotel room. Yeah, but that's the person who rented the hotel room. I know. But the next case is a more recent case from the Supreme Court, the Bird case, B.Y.R.D. Now, that case actually concerned a rental car. And the car was being driven by an unauthorized driver. The police stopped the car. And as to his standing, the Supreme Court said he did have standing even though he was not authorized because he could have been a second bailee under property theory. Or in that case, he did have standing. And in this case, a fortiori, the claim of standing is even stronger because a hotel room gets greater protection than a motor vehicle. So I think the question is answered in the Bird case. Isn't it possible, though, that so even if Bird gets you beyond the hypothetical that sort of automatically because you didn't rent the hotel room in your own name, you lose standing under the 1101, what I'll call the 1101 theory that other courts have expressly adopted, that your guy's connection to this hotel room is pretty tangential, right? I mean, as Judge Wilson says, the room is not even rented in his name. It's not a long-term stay like a lease. This is a one-night stay in a hotel room rented under someone else's name. That just seems like a pretty tangential connection. Why not in those circumstances agree with every other circuit that's concluded that at 1101, the reasonable expectation of privacy vanishes? Well, as I said, number one, the case is – no case has interpreted as far as statute. Am I wrong, by the way? Does the statute exist within the framework of a provision that allows for a misdemeanor prosecution and sort of sets up a defense in effect to that prosecution? Or does it purport to state an affirmative right to stay? Yes, because it – In perpetuity, I assume. No, not in perpetuity, but it does – Then what's the limit? What's the limiting principle under the statute from your perspective? If the landlord – the hotel satisfies the preconditions for ejectment – But so until that happens, until notice is given, I get to stay in any hotel room I want? Yes, you do, Your Honor. In perpetuity? As long as the hotel fails to satisfy the conditions for ejectment. All right. Let me take you back to the protective sweep. It seems to me the police, the law enforcement in this case, articulated two reasons. One, he might – your client might have been in there, and second, someone else might have been there that posed a danger. The room's not rendered in his name. It's rendered in someone else's name. Why wouldn't it be reasonable to do a protective sweep just to make sure they know whether there's someone else or not in the room? They know when they arrive on the scene, they understand he has a violent background, has a felony record, and could be considered armed and dangerous upon the approach to him. So why wouldn't it be reasonable, even if they think he's in the woods? It seems to me that your question presupposes that a protective sweep can be based upon a mere hunch. What did the officers observe or know? I think there's more than a mere hunch, so let's force – I'm going to force you to answer the question and not go to a hunch response. The room's not in his name. The room was rented by someone else. They know that, right? Yes. Okay. So I don't think that's a mere hunch. But they had the name and the phone number of the person. They could have done some type of investigation to see if that person had a criminal record. They did not. So they didn't come up with an articulable fact to say that if they thought that person was armed and dangerous, what was the basis? It was up to the government to present the evidence to show that they had a reasonable belief that the room may have been occupied by a dangerous person, and they failed to carry that burden. Checkout time was 11 o'clock, and if he wasn't going back, a hotel mate would have come in there and discovered the heroin. So how do you get past the inevitable discovery doctrine? Well, it's not necessarily true that the hotel mate would have discovered it because if they had come along – I thought the hotel manager testified that the hotel mate comes in after checkout time to clean the room. That's because the hotel manager did not honor the requirements of the Florida statute. I'm way past my time. I'll try to come back. Thank you. All right. Thank you, Mr. Suma. We'll hear from the government. Ms. Learn. Good morning, Your Honors. May it please the Court. Jordan Learn on behalf of the United States. There are a number of issues in this case that are interconnected. Unless the Court would like me to start elsewhere, I'm going to start what I think was the most logical place to begin at the top, which is whether Mr. Ross had standing to challenge either search. The district court determined that there was standing to challenge the protective suite, correct? That is correct. That's what she did during the hearing. And our position would be that to the extent that – our position is clearly that Mr. Ross abandoned the room when he took flight with no intent at that moment to return or to have – really what matters is whether or not abandonment had manifested by the time the officers conducted the protective suite. Did you make that argument to the district court? No, I don't think we framed it in terms of abandonment. We did suggest that he may not have standing. And so our precedent seems a little goofy on this, frankly, to me. But we've got cases saying that for Fourth Amendment standing purposes, the question whether there is a reasonable expectation of privacy, that's something the government can waive, right? But there's also this case Sparks that seems to suggest where the failure of standing is like an ex-post failure, an abandonment-based failure, that that runs to Article III. Right. So, frankly, that seems totally wrong to me, but that kind of is what it is. Is that how you're sort of before us saying, yeah, abandonment as to the first search even though we didn't argue it before? That's certainly part of it. I think even if it's non-jurisdictional, I think it is something that this court can consider whether or not the defendant had standing. I do not disagree with Your Honor that this court's precedent predating Sparks didn't exactly consider standing in the jurisdictional sense. Doesn't Rackus or Rackus or Rackus or however you pronounce the case in the Supreme Court, doesn't it pretty clearly say, no, no, no, no, no? Look, we talk about Fourth Amendment standing, but we don't mean Article III standing. Right, and I think the distinction I would say with Rackus and even Byrd, because Byrd does touch on this in the end towards the end of the opinion, is that there is an element to Fourth Amendment law, Fourth Amendment standing that is non-jurisdictional. But with abandonment, it's slightly different. And this is what Judge Rosenbaum talks in the Sparks opinion is it's a subjective understanding, right? If the defendant subjectively abandoned his privacy and his property interests in a place, it can be a car, but it also can be, according to the circuit's precedent, a home, a residence, that there's no injury in fact there. Because he doesn't even have a subjective property interest. He doesn't have a subjective privacy interest. He's gone. He's left. He's not coming back. And because there's no subjective interest, there's no injury in the circumstance. And so I don't think that, at least in terms of the Supreme Court, has ever passed on the question in terms of abandonment and whether or not the defendant has shown an injury, which is a requirement for Article III standing. Hasn't the courts also said that when you have a hotel room, you have a reasonable expectation of privacy in there just like you would have in your home? Absolutely, Your Honor. So if this was his home rather than a hotel room and he took off, would the government have the same argument? Would he have abandoned his home? Right. It's going to depend really on the facts of the case. But I would point the court. I would say, yes, we potentially would have an argument. And abandon your home? Absolutely. Well, that's what the court held in Winchester, right? And Winchester was slightly different because there the district court had made the requisite fact finding. And so they were reviewing for clear error whether or not he had abandoned his residence. But it was his residence. It was his dwelling. And he was a fugitive. He knew he was a fugitive. He had been attempting to invade law enforcement for a long time. So if he ran from the police when they saw him coming to his home, the police could have gone into his home to conduct a protective sweep? Not, well, depending. I don't know that this protective sweep would be justified necessarily, but whether or not he had standing. I think it's going to really depend specifically on the facts of the case. And the facts on Winchester were that he was a fugitive that had invaded for some period of time. Well, if the facts were exactly they are in this case, except it was his home instead of a hotel room, those are the facts. Like you said, it would depend on the facts of the case. Those would be the facts of the case. We would have to say that he abandoned his home? I think it would be a tougher case, Your Honor. But your home is slightly different than a hotel room when you know your interest in the hotel room is set to expire at a set period of time and you voluntarily depart with no intention to return. Right. I mean, the 11 a.m. Checkout time after that, at least as far as every circuit as I can tell, has held. You don't have a reasonable expectation of privacy. And Ross knew that he had. I mean, the room was rented for one night. It wasn't even in his name. So when he departed and, you know, with no intent to ever return to that room. Now, what about your adversaries' reliance on the statute? I do not agree with my counsel's interpretation of the statute. I think that every Florida hotel management would disagree with that interpretation as well. I think that, Judge Newsom, you're probably right. It lays out a framework specifically where it creates an offense of criminal trespass. That's what it says towards the bottom of the statute, is that if you give a notice and the defendant stays, well, then you can send a law enforcement officer in to arrest him for criminal trespass. It doesn't say that if you don't comply with the statute, the defendant can stay in perpetuity. Right. And, in fact, I think what's important fact to note here is that the defendant that had left, who didn't come back, and nobody called and said, hey, we want to continue renting the room. So to expect the hotel in that circumstance, knowing that he had departed, knowing that nobody called. If he had no intent to return to the room, why does the law enforcement need to conduct a protective suite? Sure. Well, I would say two things. Those ideas, I think, do seem a little contradictory. But the universe of information that the court considers in determining whether or not he abandoned the room and whether or not law enforcement had reason to believe he was in the room is slightly different. So abandonment is kind of an objective question. We consider the facts we knew at the time, as well as the facts that happened after the alleged abandonment, to try and discern what the defendant's intent was. When we're looking at whether they had reason to believe Mr. Ross or somebody else was in the room, we're looking at what law enforcement knew at that very moment, 10 minutes after Ross had departed. And in this case, they had seen him start to take off over the highway. Now, the district court found, I think, that Agent England's testimony was that he had started, that he had crossed, like, the first two lanes. Nothing in the record supports that they had seen him run all the way across the highway. But anyways, by the time they had made it there, he was gone. He was out of sight. And they searched for about 10 minutes and could not find him. And when they realized that nobody had, right, had stayed back. And district court found it reasonable. I don't think her justification, her justification was that Ross, officers knew he had left behind a vehicle. They had seen him start to approach a vehicle that seemed to be his. And that he had presumably left behind property, as well, because there's no evidence in the record that he came out with any of his belongings or baggage that would indicate that he had taken it out of the room. So I think based on that, they had reason to believe, in these extreme circumstances, that he would have doubled back to the room. Now, it doesn't have to be they were absolutely certain, right? They just had to have a reason to think he would have gone back and entered. But even if they didn't have a reason to think that Ross had necessarily gone back, there is the added element here that they knew somebody else's name was on the room. And they knew that that person presumably, I think it's reasonable that when law enforcement knows somebody's name is on a room, sees somebody else depart the room, but not the person whose name is on the room, they can infer that there's another person inside. And in that case, it would presumably be a colleague of Ross's. Was there any sort of evidence that they inferred that there was someone else inside? Agent England did testify that they had gotten the hotel registration when they got the key to go into the room. They'd also been testimony that as soon as they got to the hotel, so even before Ross emerged from the room, they had checked with the person at the desk to see if Ross's name was on any of the rooms. They knew if Ross was at the hotel, he was staying in a room that somebody else had rented. And then, anyways, I think it's reasonable to assume when you've got somebody else's name on the hotel, that they can assume that there's a person in there that could pose a threat to the agents executing the arrest warrant in this circumstance. And I don't think it's reasonable to say, well, law enforcement, you've got the name, you need to stop what you're doing, you need to call them, you need to run a background check. I mean, that completely undermines the purpose of the protective sweep doctrine, which is in these kind of tense, volatile circumstances to allow law enforcement, when they have reasonable suspicion that somebody else is present, to conduct just a brief protective sweep to make sure nobody's there. You know, having Agent England sit out in the parking lot on his phone, trying to confirm whether or not the person's name who's on the room is a threat, I think, is just beyond what our court's case is content. They went back to the room to see if he doubled back, not to see if someone else was there. Isn't that what they testified to? They were looking for him. They were, but he also, Agent England did say that they, I think his testimony was that there could have been somebody else inside. But I will also say that I don't think the agent's subjective motivations are what matter. It's what's objectively reasonable in this circumstance. And it would be objectively reasonable for agents executing arrest warrant who know that somebody else went into the room to believe that somebody else is in the room and, you know, have a justified protective sweep on that basis. Let me take you back to Byrd and Sparks because I'm still struggling. Right. The age-old question, is the Article III language in Sparks dictum or holding? I would say that it's a holding. I thought it was pretty ambiguous, but unambiguous. They upheld the district court. So I'm just wondering if that's necessary to the ruling. I think it's necessary to the ruling with respect to whether or not the seizure of the phone was unreasonably long. And that was the court's holding, right? They didn't have standing. They didn't have jurisdiction to consider that question. I'll give you that. So did Byrd erase that? No, because Byrd wasn't an abandonment case. But Byrd says pretty clearly, it seems to me, that Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, not Article III jurisprudence. Right. And I completely agree. That language, I mean, that's exactly what Byrd says. I'm just wondering about that little hiccup in the precedent of the Eleventh Circuit where it seems like we did get off course analyzing Fourth Amendment challenges under Article III. And I would distinguish that, as I did earlier, that we're looking at with abandonment, at least in this case, we're looking at the defendant's subjective, whether he had a subjective interest of privacy or property or possessory interest in the room, and he abandoned that. And so, therefore, there's no injury in this case. In a way, that sort of seems like 180 degrees wrong to me because the failure, the nonexistence of a reasonable expectation of privacy on the front end, like never had it, never existed. What are you talking about? We say that's a Fourth Amendment. That's a matter of Fourth Amendment substantive doctrine, whereas if you had it and then you lost it later, that is a matter of Article III. Doesn't that seem kind of goofy? Well, I don't – it's a difficult question reconciling some of the language in the court's precedents. I don't disagree with that. I think – right, so part of this is a legal question. You have an expectation of privacy, a subjective one. Is that expectation of privacy reasonable? And I think when you're considering – you know, reasonable in society's view. I think when you're considering the second question, that's subsumed under Fourth Amendment doctrine. And so you can certainly have perhaps a reasonable – something that society would deem reasonable, but you subjectively don't actually have any interest – privacy interest, property interest in that area. And so that's how I would kind of seek to distinguish it. I agree it's a little inconsistent. It's not entirely clear. That's the best I can do for your honors. It seems to me that your friend over there would really want to focus on this for future cases because the government can waive a Fourth Amendment argument by not raising it in the court below. But if it's Article III, you could walk in here today and say it was abandonment even though the district court never had to grapple with that. I don't disagree with your honor. I would say, though, even if it's something that we could waive, I think the court – it's within the court's discretion to consider the issue. It has been briefed here. I don't think it's been – I'm not saying you've waived it. I'm just saying for future cases. Certainly. Absolutely, your honor. He might walk in one day to a court like this and have a USA argue something he's never heard before, and if it's Article III, it's fair game it seems to me. I don't disagree, and I do believe it happens sometimes. If the court doesn't have any other questions about abandonment or the sweep, I would like to shift briefly to consent in the time that I have left because I understand the protective sweep, it's a balancing act, is a little tough. But I think consent, setting aside abandonment, we've got the hotel manager's consent here, and I think really that is a very difficult hurdle for Mr. Ross to overcome. There's no – so the district court found, and it is a factual finding, that Ms. Wilson voluntarily consented to the search of the hotel room. I don't think that finding is clearly erroneous. The consent – the voluntariness of the consent was not addressed really, argued really below by Mr. Ross, so the record is not as developed, I think, as we would like. The police testified that Ms. Wilson consented to a search of the hotel room? Ms. – not Ms. Wilson. Did I say Ms. Wilson? Ms. Nelson. Nelson. I'm sorry. I apologize. No. I hope it's not Ms. Wilson. Oh, yeah. Well, I certainly want to make sure I'm talking about the right witness. The police – well, Ms. Nelson also testified that she consented as well. Okay. So she testified, and actually, Agent Sui's testimony was that she got the consent twice. When she arrived on the scene, which I think Agent Sui's testimony was, that was about 1045, so that was kind of – That would have to have been with regard to the second search. Absolutely, and our position would be the second search was voluntarily consented to, and then the first search, even if the protective sweep was invalid, was justified by inevitable discovery. Judge Rogers made good facts findings to that as well. I see that my time is winding down. So unless the court has any further questions, we'll rest on a brief and ask that you affirm the order of the district court. Thank you. Thank you, counsel. Mr. Suma, you've reserved some time. Thank you, Your Honor. Let me clarify. In my brief, I argued that Mr. Ross had no intention to return to the hotel room while the police were present. Certainly, if he had been unable to discover that the police terminated their surveillance and all the coast was clear, he certainly would have gone back to reclaim his truck and the belongings in the premises. So now the primary focus of the present Supreme Court is to emphasize that the Fourth Amendment protects against unreasonable invasions of property interests. In the Carpenter case, Judge Gorsuch explained that property interests arise from positive law. He defined positive law to mean democratically legitimate sources of law, including property, tort, contract law, and rights defined by legislative enactments. The legislative enactment that is involved here is the Florida statute to which I refer. What was the principal purpose of that statute? The principal purpose is to define when the hotel has the right to eject the tenant, the renter. As a criminal trespasser, correct? It makes the failure to leave a trespass, but not until that trespass occurs does the hotel have the right to eject. So let me ask you this. Is it your position, and this is not an original thought, and talking about this case with my law clerks, one of them said, well, if you look on the backs of hotel doors, a lot of the time, if you read the fine print, a lot of the time it'll say, in addition to like we can charge you some exorbitant rate, it'll also say, and by the way, if you overstay your welcome, you're on the hook for another night. So does that mean that in states, hotel chains, whatever, that choose to put that sort of language on the back of a hotel room, that you've got a continuing expectation of privacy past checkout time? If that statement on the hotel door represents or comes from a statute, I think probably the answer is yes. I can't say definitively, but statutes do create rights and do affect the duration of tenancies. It seems to me if your client has a continuing expectation of another night at the hotel, then he also has an expectation that the maid's going to come in and clean the room for him for that night. Either way, the maid's coming in the room, right? I don't know. I mean when I stay in a hotel, very frequently I put a sign on the door that says do not disturb. Yeah, he didn't do that before he ran across I-10. Well, there's – but there's no evidence either way. And where the government has a burden to prove and a motion to suppress, that burden has not been carried. So we're asking you to reverse the conviction and remand for further proceedings. I thank you very much. Thank you. Thank you, Mr. Suma. Ms. Lawrence. Thank you.